**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

AYSE IYIGUNDOGDU,
Plaintiff,

v.

PAYWARD, INC. (D/B/A KRAKEN DIGITAL ASSET EXCHANGE),

Defendant.

Case No. 1:25-cv-09282 (MMG)

**ORAL ARGUMENT REQUESTED**

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**OUTTEN & GOLDEN LLP**

Gregory S. Chiarello
Amanda T. Chan
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
gchiarello@outtengolden.com
achan@outtengolden.com

Hannah C. Meropol (pro hac vice forthcoming)
1 California St., 12th Floor
San Francisco, CA 94111
Telephone: (415) 991-6569
hmeropol@outtengolden.com

## Table of Contents


**INTRODUCTION** ........ 1

**MOTION TO DISMISS LEGAL STANDARDS** ........ 2

**ARGUMENT** ........ 3

**I. PLAINTIFF STATES CLAIMS FOR DISCRIMINATION** ........ 3

A. Plaintiff Sufficiently Pleads Discrimination Under Federal, State, and City Law...3

B. Kraken's Arguments Fail Procedurally and Substantively ........ 7

1. Kraken's Comparator Analysis is Legally Incorrect, and Premature ........ 8

2. Plaintiff Alleges Sufficient Temporal Proximity ........ 11

3. Kraken Lodges Legally Incorrect Arguments Concerning the Import of Plaintiff's Allegations ........ 13

4. The Court Should Reject Kraken's Self-Serving Interpretation of Plaintiff's Allegations ........ 15

C. Plaintiff Sufficiently Pleads Claims Under the NYSHRL and NYCHRL ........ 18

D. Kraken's Arguments Concerning Plaintiff's Pleaded Entitlement to Punitive Damages Rely on Misapplication of Law ........ 19

**II. PLAINTIFF HAS SUFFICIENTLY PLEADED VIOLATIONS OF NYLL SECTION 193** ........ 20

A. Kraken Incorrectly Argues the Necessary Legal Standards for Pleading and Proving NYLL Section 193 Claims ........ 20

B. Plaintiff's Unpaid Commissions Qualify as Wages Under Section 193 ........ 23

C. Plaintiff Seeks Post-Termination Commissions Under Discrimination Law ........ 24

**CONCLUSION** ........ 24

# Table of Authorities

## CASES

*Amador v. All Foods, Inc.*,
No. 12-cv-1715, 2013 U.S. Dist. LEXIS 47458 (E.D.N.Y. Feb. 20, 2013) .................... 12

*Apple Mortg. Corp. v. Barenblatt*,
162 F. Supp. 3d 270 (S.D.N.Y. 2016)........................................................................ 21, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................ 2

*Báez v. New York*,
629 F. App'x 116 (2d Cir. 2015) ..................................................................................... 10

*Balchan v. City Sch. Dist. of New Rochelle*,
No. 21-cv-04798, 2023 U.S. Dist. LEXIS 125993 (S.D.N.Y. July 21, 2023).............. 9, 10

*Beng Soon Lim v. Harvest Int'l Realty, Inc.*,
No. 08-cv-3505, 2009 U.S. Dist. LEXIS 109389 (E.D.N.Y. Nov. 23, 2009) .................. 22

*Birner v. Kensington Vanguard Holdings, LLC*,
No. 24-cv-2743, 2025 U.S. Dist. LEXIS 61611 (S.D.N.Y. Mar. 31, 2025)..................... 21

*Branch v. State Univ. of N.Y.*,
No. 18-cv-9516, 2020 U.S. Dist. LEXIS 127422 (S.D.N.Y. July 20, 2020).................... 16

*Budhan v. Brightworks Sustainability LLC*,
No. 24-cv-5104, 2025 U.S. Dist. LEXIS 56557 (S.D.N.Y. Mar. 26, 2025)..................... 10

*Bueno v. Eurostars Hotel Co.*,
No. 21-cv-535, 2022 U.S. Dist. LEXIS 4605 (S.D.N.Y. Jan 7, 2022) ................. 11, 13, 18

*Cardwell v. Davis Polk & Wardwell LLP*,
No. 19-cv-10256, 2020 U.S. Dist. LEXIS 198655 (S.D.N.Y. Oct. 24, 2020)............ 10, 19

*Chenensky v. N.Y. Life Ins. Co.*,
No. 07-cv-11504, 2009 U.S. Dist. LEXIS 119549 (S.D.N.Y. Dec. 22, 2009)........... 21, 23

*Clark Cty. Sch. Dist. v. Breeden*,
532 U.S. 268 (2001)...................................................................................................... 12

*Clark v. CSX Transp., Inc.*,
No. 13-cv-1596, 2014 U.S. Dist. LEXIS 136724 (N.D.N.Y. Sep. 29, 2014)................... 15

*Cocca-Rau v. Standard Ins. Co.*,
No. 19-cv-06149, 2020 U.S. Dist. LEXIS 131429 (S.D.N.Y. July 22, 2020) .................... 3

*Dantuono v. Davis Vision, Inc.*,
No. 07-cv-2234, 2009 U.S. Dist. LEXIS 122119 (E.D.N.Y. Dec. 29, 2009) .................. 12

*Danzer v. Norden Sys.*,
151 F.3d 50 (2d Cir. 1998) .................... 5, 14

*De Souza v. Planned Parenthood Fed'n of Am., Inc.*,
No. 21-cv-5553, 2022 U.S. Dist. LEXIS 101757 (S.D.N.Y. June 7, 2022) .................... 20

*Desert Palace, Inc. v. Costa*,
539 U.S. 90 (2003) .................... 15

*Doe v. Long Is. Motors, Inc.*,
No. 21-cv-1232, 2022 U.S. Dist. LEXIS 102851 (E.D.N.Y. June 8, 2022) .................... 19

*Espinal v. Goord*,
558 F.3d 119 (2d Cir. 2009) .................... 11

*Franchino v. Terence Cardinal Cook Health Care Ctr., Inc.*,
692 F. App'x 39 (2d Cir. 2017) .................... 17

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
669 F. Supp. 2d 405 (S.D.N.Y. 2009) .................... 22

*Gatto v. Fujitec Am., Inc.*,
No. 21-cv-9754, 2024 U.S. Dist. LEXIS 175363 (S.D.N.Y. Sep. 26, 2024) .................... 22

*Gehlaut v. N.Y.C. Dep't of Educ.*,
No. 24-cv-1741, 2025 U.S. App. LEXIS 23110 (2d Cir. Sep. 8, 2025) .................... 12

*Gerding v. Ljungren*,
No. 23-cv-1119, 2025 U.S. App. LEXIS 33798 (2d Cir. Dec. 29, 2025) .................... 22

*Govori v. Goat Fifty, L.L.C.*,
No. 10-cv-8982, 2011 U.S. Dist. LEXIS 33708 (S.D.N.Y. Mar. 30, 2011) .............. 13, 14

*Graham v. Long Island R.R.*,
230 F.3d 34 (2d Cir. 2000) .................... 8

*Hall v. Nalco Co.*,
534 F.3d 644 (7th Cir. 2008) .................... 14

*Hernandez Tech., Inc. v. Rivera*,
237 N.Y.S.3d 317 (4th Dep't 2025) ... 23

*Horowitz v. Spark Energy, Inc.*,
No. 19-cv-7534, 2020 U.S. Dist. LEXIS 137838 (S.D.N.Y. July 31, 2020) ... 20

*Hui Li v. China Merchs. Bank Co., Ltd.*,
No. 22-cv-9309, 2024 U.S. Dist. LEXIS 144329 (S.D.N.Y. Aug. 13, 2024) ... 4, 5

*Karmilowicz v. Hartford Fin. Servs. Grp.*,
494 F. App'x 153 (2d Cir. 2012) ... 22

*Kegelmyer v. Cellular Sales Servs. Grp., LLC*,
No. 24-cv-839, 2025 U.S. Dist. LEXIS 147576 (W.D.N.Y. July 31, 2025) ... 14

*Keles v. Davalos*,
642 F. Supp. 3d 339 (E.D.N.Y. 2022) ... 18

*Kieper v. The Fusco Grp. Partners Inc.*,
59 N.Y.S.3d 561 (3d Dep't 2017) ... 22

*Komlossy v. Faruqi & Faruqi, LLP*,
No. 15-cv-9316, 2017 U.S. Dist. LEXIS 25490 (S.D.N.Y. Feb. 23, 2017) ... 22, 24

*Kourofsky v. Genencor Int'l, Inc.*,
459 F. Supp. 2d 206 (W.D.N.Y. 2006) ... 5

*Kpaka v. City Univ. of N.Y.*,
708 F. App'x 703 (2d Cir. 2017) ... 10

*Kueh v. New York*,
No. 23-cv-666, 2024 U.S. Dist. LEXIS 213886 (S.D.N.Y. Nov 25, 2024) ... 10

*Laporte v. Sullivan*,
801 F. Supp. 3d 98 (N.D.N.Y. 2025) ... 6

*Lenzi v. Systemax, Inc.*,
944 F.3d 97 (2d Cir. 2019) ... 6, 9, 10, 13

*Littlejohn v. City of N.Y.*,
795 F.3d 297 (2d Cir. 2015) ... *passim*

*Mandell v. Cty. of Suffolk*,
316 F.3d 368 (2d Cir. 2003) ... 8

*Mansaray v. Kraus Sec. Serv.*,
No. 20-cv-1415, 2022 U.S. Dist. LEXIS 26124 (S.D.N.Y. Feb. 14, 2022)...................... 11

*Margarita v. Mountain Time Health, LLC*,
240 N.Y.S.3d 80 (2d Dep't 2025)........................................................................... 19

*McCarthy v. Brennan,*
No. 19-cv-1386, 2020 U.S. Dist. LEXIS 169083 (N.D.N.Y. Sep. 16, 2020)................... 17

*Mehta v. Dla Piper LLP*,
No. 23-cv-4757, 2025 U.S. Dist. LEXIS 196664 (S.D.N.Y. Sep. 29, 2025).............. 11, 18

*Menaker v. Hofstra Univ.*,
935 F.3d 20 (2d Cir. 2019)........................................................................... 3, 16

*Miller-Sethi v. City Univ. of N.Y.*,
No. 21-cv-8591, 2023 U.S. Dist. LEXIS 13756 (S.D.N.Y. Jan. 26, 2023) .................... 2, 8

*Moore v. Hadestown Broadway LLC*,
722 F. Supp. 3d 229 (S.D.N.Y. 2024)........................................................................ 18

*Morales v. Long Island Rail Rd. Co.*,
No. 09-cv-8714, 2010 U.S. Dist. LEXIS 47926 (S.D.N.Y. May 14, 2010) ................... 3, 9

*Mumin v. City of N.Y.*,
No. 23-cv-03932, 2025 U.S. Dist. LEXIS 189235 (S.D.N.Y. Sep. 25, 2025).............. 9, 16

*Mumin v. City of New York*,
760 F. Supp. 3d 28 (S.D.N.Y. 2024).......................................................................... 19

*Mumin v. Uber Techs., Inc.*,
239 F. Supp. 3d 507 (E.D.N.Y. 2017) ........................................................................ 22

*Noh v. Admarketplace, Inc.*,
No. 24-cv-2107, 2025 U.S. Dist. LEXIS 59543 (S.D.N.Y. Mar. 28, 2025)................. 7, 18

*O'Grady v. BlueCrest Capital Mgmt. LLP*,
646 F. App'x 2 (2d Cir. 2016) .................................................................................. 22

*Ojeda v. Schrager*,
No. 23-cv-8237, 2024 U.S. Dist. LEXIS 86021 (S.D.N.Y. May 13, 2024) ....................... 7

*Olaechea v. City of New York*,
No. 17-cv-4797, 2022 U.S. Dist. LEXIS 142037 (S.D.N.Y. Aug. 9, 2022)..................... 24

*Pace v. Town & Country Veterinary Clinic P.C.*,
No. 20-cv-279, 2022 U.S. Dist. LEXIS 135779 (N.D.N.Y. Aug. 1, 2022) ...................... 11

*Pachter v. Bernard Hodes Grp., Inc.*,
891 N.E.2d 279 (2d Dep't 2008) ........................................................................ 20, 21, 23

*Pardo v. Tomas Infernuso DVM, P.C.*,
No. 24-cv-00190, 2024 U.S. Dist. LEXIS 172504 (E.D.N.Y. Sep. 24, 2024) ................. 12

*Pollock v. PNC Fin. Servs. Grp.*,
No. 13-cv-283, 2014 U.S. Dist. LEXIS 76014 (S.D.N.Y. May 19 2014) .................. 2, 6, 7

*Puranik v. Child.'s Place Servs. Co., LLC*,
No. 24-cv-4441, 2025 U.S. Dist. LEXIS 171797 (S.D.N.Y. July 31, 2025).................... 11

*Radwan v. Manuel*,
55 F.4th 101 (2d Cir. 2022) ........................................................................................... 8

*Reed v. A.W. Lawrence & Co.*,
95 F.3d 1170 (2d Cir. 1996)......................................................................................... 13

*Ri Sau Kuen Chan v. NYU Downtown Hosp.*,
No. 03-cv-3003, 2004 U.S. Dist. LEXIS 1419 (S.D.N.Y. Jan. 30, 2004) ........................ 12

*Rinsler v. Sony Pictures Entm't, Inc.*,
No. 02-cv-4096, 2003 U.S. Dist. LEXIS 14754 (S.D.N.Y. Aug. 22, 2003).................... 13

*Robbins v. City of New York*,
254 F. Supp. 3d 434 (E.D.N.Y. 2017) ..........................................................................17-18

*Santana v. G.E.B. Med. Mgmt., Inc., Ind.*
No. 305261/2008, 2017 N.Y. Misc. LEXIS 4186
(Sup. Ct. Bronx Cty. Oct. 20, 2017) ............................................................................. 20

*Santiago v. Acacia Network, Inc.*,
634 F. Supp. 3d 143 (S.D.N.Y. 2022)........................................................................ 9, 17

*Schweiger v. Wind, Ind.*
No. 154211/2012, 2014 N.Y. Misc. LEXIS 130
(Sup. Ct. New York Cty. Jan. 15, 2014) ....................................................................... 21

*Smalls v. Allstate Ins. Co.*,
396 F. Supp. 2d 364 (S.D.N.Y. 2005)........................................................................... 13

*Solomon v. Fordham Univ. Admin.*,
No. 22-cv-887, 2023 U.S. App. LEXIS 23494 (2d Cir. Sep. 5, 2023) ............................... 6

*Stern v. Trs. of Columbia Univ.*,
131 F.3d 305 (2d Cir. 1997) ........ 6

*Stevens v. Dayton Towers Corp.*,
No. 11-cv-935, 2012 U.S. Dist. LEXIS 117314 (E.D.N.Y. Aug. 20, 2012) ........ 5

*Talukder v. New York*,
No. 22-cv-1452, 2023 U.S. Dist. LEXIS 57104 (S.D.N.Y. Mar. 31, 2023) ........ 8

*Tierney v. Capricorn Invs., L.P.*,
592 N.Y.S.2d 700 (1st Dep't 1993) ........ 22

*Truelove v. Northeast Capital & Advisory, Inc.*
738 N.E.2d 770 (N.Y. 2000) ........ 24

*Uddin v. N.Y.C./Administration for Children's Servs.*,
No. 99-cv-5843, 2001 U.S. Dist. LEXIS 12207 (S.D.N.Y. Jan. 5, 2001) ........ 5

*Udoh v. N.Y.C. Dep't of Prob.*,
No. 24-cv-03982, 2025 U.S. Dist. LEXIS 148391 (S.D.N.Y. Aug. 1, 2025) ........ 18

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015) ........ 15

*Wolf v. Time Warner, Inc.*,
No. 09-cv-6549, 2011 U.S. Dist. LEXIS 15866 (S.D.N.Y. Feb. 10, 2011) ........ 4

*Wolff v. Rare Medium, Inc.*,
171 F. Supp. 2d 354 (S.D.N.Y. 2001) ........ 22

*Workneh v. Super Shuttle Int'l, Inc.*,
No. 15-cv-3521, 2016 U.S. Dist. LEXIS 136906 (S.D.N.Y. Sep. 30, 2016) ........ 19

*Wulach v. Bear, Stearns & Co.*,
No. 86-cv-5644, 1988 U.S. Dist. LEXIS 12634 (S.D.N.Y. Nov. 8, 1988) ........ 4

*Zornoza v. Terraform Glob., Inc.*,
No. 16-cv-2742, 2023 U.S. Dist. LEXIS 61827 (S.D.N.Y. Apr. 7, 2023) ........ 6

**STATUTES**

N.Y. Exec. Law § 297 ........ 19

New York Labor Law § 193 ........ 1

N.Y.S., S6577, 2019-2020 Leg. Sess. (eff. Oct. 19, 2019) .......... 19

**REGULATIONS**

N.Y. City Admin. Code 8-107 .......... 13

**FEDERAL RULES**

Fed. R. Civ. P. 8 .......... 2

Fed. R. Civ. P. 8(a)(3) .......... 19

## INTRODUCTION

Plaintiff Ayse Iyigundogdu opposes Defendant Payward, Inc.'s ("Kraken" or "Defendant") Motion to Dismiss ("MTD") her Complaint ("Compl."), which asserts claims of gender, pregnancy and disability discrimination under Title VII of the Civil Rights Act, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), as well as unlawful deductions from wages under the New York Labor Law ("NYLL") § 193. As set forth herein, Plaintiff's detailed 107-paragraph Complaint more than sufficiently pleads her claims against Kraken.

Plaintiff is a highly-accomplished financial executive who, despite being one of Kraken's few senior women, was promoted to Head of Institutional Sales and Relationships for the US/LATAM region, and developed for Kraken a billion-dollar sales pipeline for two of its key features. *See* Compl. ¶¶ 2, 23-29. However, Plaintiff's successful trajectory halted when Kraken assigned her a new manager, Tim Ogilvie, in April 2023. *Id.* ¶¶ 3, 30-81. In the ensuing months, Ogilvie and Kraken demonstrated preferential treatment for non-pregnant men; namely, by excluding Plaintiff from opportunities given to men, systemically re-assigning Plaintiff's duties and responsibilities to lesser-qualified men, setting up Plaintiff for failure, and ultimately, pushing her out of the company so that men could assume her role. *Id.* ¶¶ 3-5, 41-71. Defendant accelerated its behavior upon Plaintiff's announcement of her plans to start in vitro fertilization ("IVF") treatment and her commencement of concomitant time off for medical appointments, and terminated her employment while she was just 10 weeks pregnant. *Id.* ¶¶ 4, 46-49, 52-81.

As detailed in the Complaint, this behavior, in addition to the general absence of women in senior roles (*id.* ¶ 25), Kraken's underpayment of Plaintiff relative to men with roles of similar seniority (including by paying her just $13,000 more than her junior male report, versus

compensation of similarly-leveled men being $50,000 or more than hers) (*id.* ¶¶ 72-74), and Kraken's brushing off of Plaintiff's frequent inquiries about partial or unpaid earned commissions (*id.* ¶¶ 75-81), also support the plausible inference that Plaintiff was treated differently due to, at least in part, her membership in protected classes. *See, e.g.*, *Pollock v. PNC Fin. Servs. Grp.*, No. 13 -cv-283, 2014 U.S. Dist. LEXIS 76014, at *11-13 (S.D.N.Y. May 19, 2014) (sudden change in demeanor and treatment after news of pregnancy, sudden performance criticism, differential discipline, short timing between announcement and adverse actions, and replacement with non-pregnant employee all support a finding of discrimination).

Plaintiff has also sufficiently pleaded allegations in support of her New York Labor Law § 193 claim concerning Defendant's failure to pay full commissions owed. *Id.* ¶¶ 75-81.

## MOTION TO DISMISS LEGAL STANDARDS

Notice pleadings in federal court require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015).

The federal pleading requirement is one of plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In determining whether a Plaintiff has met the plausibility requirement, the court is to draw on its judicial experience and common sense." *Miller-Sethi v. City Univ. of N.Y.*, No. 21-cv-8591, 2023 U.S. Dist. LEXIS 13756, at *12 (S.D.N.Y. Jan. 26, 2023) (denying motion to dismiss Title VII discrimination claim) (internal citation and quotation omitted). "The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation."

*Littlejohn*, 795 F.3d at 311. "Plausibility . . . is not probability, but rather requires only that the allegations give rise to an inference of discriminatory motivation that 'nudge [the plaintiff's] claims across the line from conceivable to plausible.'" *Cocca-Rau v. Standard Ins. Co.*, No. 19-cv-06149, 2020 U.S. Dist. LEXIS 131429, at *12 (S.D.N.Y. July 22, 2020) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). "A complaint that contains specific factual allegations as to events leading up to an adverse action, accompanied by conclusory allegations of discriminatory intent, suffices to state a discrimination claim." *Morales v. Long Island Rail Rd. Co.*, No. 09-cv-8714, 2010 U.S. Dist. LEXIS 47926, at *8 (S.D.N.Y. May 14, 2010) (denying dismissal of disparate treatment claim). Plaintiff's complaint well surpasses this minimal threshold.

## ARGUMENT

## I. PLAINTIFF STATES CLAIMS FOR DISCRIMINATION

### A. Plaintiff Sufficiently Pleads Discrimination Under Federal, State, and City Law

Plaintiff's allegations more than satisfy her low burden under Fed. R. Civ. P. 8 and *Iqbal* to provide Kraken with notice of her Title VII, NYSHRL, and NYCHRL claims. "To survive a motion to dismiss [under Title VII], a plaintiff need only establish a *prima facie* case of sex discrimination by demonstrating that [she] (1) was within the protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (reinstating sex discrimination claims) (internal quotations and citations omitted).

Kraken's motion challenges only whether Plaintiff has alleged circumstances providing at least minimal support for an inference of discriminatory intent. She has. "[A]t the initial stage of

litigation – prior to the employer's coming forward with the claimed reason for its action – the plaintiff does not need substantial evidence of discriminatory intent." *Littlejohn*, 795 F.3d at 311. "The discrimination complaint, by definition, occurs in the first stage of litigation. Therefore, the complaint . . . benefits from the temporary presumption [of discriminatory intent] and must be viewed in light of the plaintiff's minimal burden to show discriminatory intent." *Id.* The Complaint details several different allegations of disparate treatment based on Plaintiff's gender and pregnancy status that, if proven, would support a jury finding of discrimination.

As an initial matter, Plaintiff alleges that Kraken re-assigned her duties and ultimately replaced her with less-qualified men. The Second Circuit has held such allegation alone to be sufficient to plead an inference of discriminatory intent. *Littlejohn*, 795 F.3d at 313 ("The fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination . . . at the pleading stage."); *see also Wolf v. Time Warner, Inc.*, No. 09-cv-6549, 2011 U.S. Dist. LEXIS 15866, at *19 (S.D.N.Y. Feb. 10, 2011) (inference of discriminatory intent where plaintiff's assignments given to younger colleagues). Specifically, Plaintiff alleges that Kraken assigned Plaintiff a new manager, Tim Ogilvie, in April of 2023, who quickly began removing Plaintiff's responsibilities, reassigning them to male colleagues (Compl. ¶¶ 41-59), such as giving Plaintiff's Custody-related responsibilities to Jonathon Marcus (*id.* ¶ 46) and giving marketing and product-related responsibilities to David Olsson (*id.* ¶ 50).

Relatedly, Plaintiff further alleges that Kraken undermined her role and her ability to succeed, actions which also support an inference of discrimination. *See Wulach v. Bear, Stearns & Co.*, No. 86-cv-5644, 1988 U.S. Dist. LEXIS 12634, at *15 (S.D.N.Y. Nov. 8, 1988) (showing of discriminatory intent where "supervisor routinely undermined her authority with her staff" by commandeering her direct reports); *Hui Li v. China Merchs. Bank Co., Ltd.*, No. 22-cv-9309,

2024 U.S. Dist. LEXIS 144329, at *29 (S.D.N.Y. Aug. 13, 2024) (showing of discriminatory intent where male colleague took plaintiff's meetings for her and undermined her authority). Kraken redistributed her direct reports to male colleagues (Compl. ¶¶ 46, 52), removed Plaintiff from internal meetings and hiring processes (*id.* ¶¶ 47, 53), and usurped her established relationships by men contacting her long-standing clients directly and without her knowledge. (*id.* ¶¶ 48, 52, 54-58). All of these actions support a finding of discriminatory intent.

Additionally, Ogilvie gave Plaintiff false performance feedback and discouraged her efforts. Such actions further support a finding of discriminatory intent, particularly where Ogilvie did not similarly treat Plaintiff's male counterparts (*see* Section I.B.1., *infra*). *See, e.g.*, *Danzer v. Norden Sys.*, 151 F.3d 50, 57 (2d Cir. 1998) ("sudden downturn in [plaintiff's] evaluations" may "support a jury verdict of discrimination"); *Uddin v. N.Y.C./Administration for Children's Servs.*, No. 99-cv-5843, 2001 U.S. Dist. LEXIS 12207, at *13-14 (S.D.N.Y. Jan. 5, 2001) (jury could find new manager's sabotage of plaintiff's work after many years of good performance constituted discrimination); *Stevens v. Dayton Towers Corp.*, No. 11-cv-935, 2012 U.S. Dist. LEXIS 117314, at *2 (E.D.N.Y. Aug. 20, 2012) (plaintiff stated plausible claim of discrimination where the manager wrongly blamed him for other employees' mistakes); *Kourofsky v. Genencor Int'l, Inc.*, 459 F. Supp. 2d 206, 212 (W.D.N.Y. 2006) (noting "a sudden decline in performance could reasonably support an inference that the later evaluation was a sham") (internal citations and quotation omitted).

Here, Kraken set Plaintiff up to fail and blamed Plaintiff for launch delays not in her control. Compl. ¶¶ 63-66. To discourage Plaintiff, Ogilvie said pointedly to Plaintiff, "You will be an embarrassment" regarding the launch of Custody, even though he had a role in the need to delay the launch. *Id.* ¶ 66. In contrast, prior to Ogilvie becoming Plaintiff's manager, Kraken had

provided Plaintiff consistently positive performance reviews and public praise for many years, including from Kraken's CEO. *Id.* ¶ 29. Ogilvie gave Plaintiff her first negative review (having said nothing to Plaintiff about her performance prior to then). *Id.* ¶¶ 60-63. The sudden change in behavior is all the more suspicious given that Ogilvie did not follow Kraken's usual feedback-gathering process when evaluating Plaintiff's performance. *Id.* ¶ 62. *See Pollock*, 2014 U.S. Dist. LEXIS 76014, at *12 (sudden change in attitude towards newly-pregnant plaintiff, and scolding her for violating policy without similarly discipling violating men, supported inference of discrimination). Such deviation permits an inference of discrimination.[1] *See, e.g.*, *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997) (deviation from normal procedures supported inference of discrimination); *Laporte v. Sullivan*, 801 F. Supp. 3d 98, 104 (N.D.N.Y. 2025) (departure from normal employee review procedure supported inference of discrimination).

In comparison, Ogilvie treated his male reports well. For example, Ogilvie did not discipline Olsson when Olsson violated a client's compliance policies, a serious mistake that jeopardized Kraken's relationship with the client. Compl. ¶ 57. He also gave Marcus credit for Plaintiff's accomplishment. *Id.* ¶¶ 38, 46, 71. This disparate treatment further supports an inference of discrimination.

Plaintiff further alleges differential pay and pay practices based on gender, both of which support an inference of discrimination. *See, e.g.*, *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 111 (2d Cir. 2019) (male executives paid more fairly than plaintiff female executive constituted unequal pay claim); *Solomon v. Fordham Univ. Admin.*, No. 22887-cv, 2023 U.S. App. LEXIS 23494, at

---

[1] Similarly, that key Kraken employees, including the Chief of Staff to the CEO, were not aware of Plaintiff's termination further supports an inference of discrimination. *See Zornoza v. Terraform Glob., Inc.*, No. 16-cv-2742, 2023 U.S. Dist. LEXIS 61827, at *54 (S.D.N.Y. Apr. 7, 2023) (director's "surprise" at the decision to terminate plaintiff constituted evidence of unlawful termination).

*8 (2d Cir. Sep. 5, 2023) (reinstating Title VII unequal pay claims where male colleagues were paid more). Plaintiff Kraken similarly-situated men more than her, (Compl. ¶¶ 72-74), and that Kraken failed to pay Plaintiff all of her commissions while continuing to do so for men (*id.* ¶¶ 75-80).

Discriminatory intent can also be inferred from the short time frame between Ogilvie becoming Plaintiff's manager, Plaintiff's stated intentions to become pregnant, Plaintiff's pregnancy announcement, and Kraken's decision to fire her. *Id.* ¶ 41, ¶¶ 68-69. *See, e.g.*, *Ojeda v. Schrager*, No. 23-cv-8237, 2024 U.S. Dist. LEXIS 86021, at *8-9 (S.D.N.Y. May 13, 2024) (denying motion to dismiss where employer fired plaintiff two months after pregnancy announcement without providing reasoning); *Pollock*, 2014 U.S. Dist. LEXIS 76014, at *12-13 (termination four months after pregnancy announcement showed discriminatory intent).

These facts are "sufficient to allow the claim to proceed because at this juncture, the 'ultimate question' of whether an adverse action was attributable to discrimination, need not be proven." *Noh v. Admarketplace, Inc.*, No. 24-cv-2107, 2025 U.S. Dist. LEXIS 59543, at *26-28 (S.D.N.Y. Mar. 28, 2025) (denying dismissal of discrimination claims) (internal citation and quotation omitted); *see also Littlejohn*, 795 F.3d at 311 (the complaint "must be viewed in light of the plaintiff's minimal burden to show discriminatory intent").

### B. Kraken's Arguments Fail Procedurally and Substantively

Defendant asserts four categories of arguments to support its claim that the Complaint fails to raise an inference of discriminatory intent: (1) Plaintiff does not sufficiently allege similarly-situated comparators; (2) Plaintiff does not allege sufficient temporal proximity; (3) Plaintiff's allegations are factually inadequate; and (4) Defendant has non-discriminatory alternative explanations for Plaintiff's allegations. Each of these arguments fail.

### 1. Kraken's Comparator Analysis is Legally Incorrect, and Premature

Defendant argues that the men Plaintiff identifies as being treated better than her are not proper comparators. MTD at 10-13. Defendant's argument is misplaced, as the question of whether a comparator is proper is a fact-specific inquiry necessarily reserved for the jury after the benefit full discovery. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury."); *see also Radwan v. Manuel*, 55 F.4th 101, 133 (2d Cir. 2022) (jury must decide whether comparators are sufficiently similarly-situated); *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (reviving discrimination claims because similarly-situatedness is a question for the jury). In any event, Kraken's conclusions about Plaintiff's comparators are misplaced.

Defendant mistakenly asserts that Plaintiff's comparators need be identical to her in all respects. There is no such requirement under the law; similarly-situated individuals need not be identical (and rarely ever are). *See, e.g.*, *Radwan*, 55 F.4th at 132 (comparator need not be identical); *Graham*, 230 F.3d at 40 (same); *Talukder v. New York*, No. 22-cv-1452, 2023 U.S. Dist. LEXIS 57104, at *24 (S.D.N.Y.) (noting that a plaintiff "not obligated to show disparate treatment of an identically situated employee") (internal citations omitted); *Miller-Sethi*, 2023 U.S. Dist. LEXIS 13756, at *14 ("comparator employees need not be identically situated to plaintiff, but rather similarly situated in all *material* respects") (emphasis in original).

Rather, the question of comparability is necessarily one that is fact and situation specific. Here, Plaintiff asserts that men of approximate seniority and level within Kraken were treated more favorably than her, including with respect to work assignments and compensation. Olsson and Marcus took over the same work Plaintiff had handled and reported to Ogilvie in doing so. Plaintiff also alleges numerous instances in which they excluded her from work they instead were performing, took credit for her work, and sought to usurp her client relationships. Compl.

¶¶ 41-59. Although not specifically alleged, it is easily inferred that none of these men were pregnant during the same time period. Such facts make it "plausible that a jury could ultimately determine that the comparators are similarly[-]situated." *See Mumin v. City of N.Y.*, No. 23-cv-03932, 2025 U.S. Dist. LEXIS 189235, at *16, 25 (S.D.N.Y. Sep. 25, 2025) (colleagues that performed largely the same tasks, *inter alia*, sufficed as similarly-situated comparators).[2]

Defendant also incorrectly argues that Berman is not a comparator because he and Plaintiff did not perform the "same or similar" work. This argument is likewise misplaced. Kraken hired Berman, who had less experience than Plaintiff, as a junior direct report to Plaintiff. Compl. ¶ 72. Despite being hired into a junior role, Kraken provided Berman with the same salary that it paid Plaintiff (his direct supervisor) at the time before raising Plaintiff's salary by only $13,000. *Id.* ¶ 72. That Plaintiff earned barely more than her newly-hired subordinate after more than five years with Kraken, when men at a level similar to Plaintiff earned significantly more than her, gives rise to an inference of discrimination. *Santiago v. Acacia Network, Inc.*, 634 F. Supp. 3d 143, 153 (S.D.N.Y. 2022) (finding male with lesser credentials than plaintiff could plausibly be comparator).

While Defendant complains (MTD at 12) that Plaintiff's compensation comparator allegations are "too conclusory," they are in fact more than sufficient at the pleadings stage. *See Morales*, No. 08-cv-8714, 2010 U.S. Dist. LEXIS 47926, at *8 (S.D.N.Y. May 14, 2010) (factual allegations with conclusory allegations raises discrimination claim); *Balchan v. City Sch. Dist. of New Rochelle*, No. 21-cv-04798, 2023 U.S. Dist. LEXIS 125993, at *32 (S.D.N.Y. July 21,

---

[2] Likewise, although Defendant takes issue with the differing titles held between Plaintiff and her male comparators, they need not have the same exact role or job title in order to be similarly situated. *See, e.g.*, *Lenzi*, 944 F.3d at 111 (plaintiff showed prima facie discrimination where other male executives with different roles were paid more than plaintiff.)

2023) (plaintiff stated claim where she identified male colleagues paid better than her because she "need only allege sufficient facts from which 'a jury could ultimately determine that the comparators are similarly situated'") (internal citation omitted). Plaintiff alleges the identity of many of her comparators, the nature of their job roles, their level of seniority with Kraken and experience relative to hers, to whom they reported, and the manner in which they received preferential treatment to her. *See supra* Section I.A.; Compl. ¶¶ 41, 46, 50, 52, 69, 74-79. These facts raise an inference of discriminatory intent sufficient for actionable gender discrimination. *See Lenzi*, 944 F.3d at 110 ("[A]ll Title VII requires a plaintiff to prove is her employer discriminated against her with respect to her compensation because of her sex.") (internal citations and quotations omitted, cleaned up); *Balchan*, 2023 U.S. Dist. LEXIS 125993, at *32 (denying dismissal where female plaintiff paid less than male comparators).

In contrast, Defendant's relied-upon authority describes circumstances in which the plaintiff failed to allege *any* facts as to why she would be similarly-situated to her comparators. *See Cardwell v. Davis Polk & Wardwell LLP*, No. 19-cv-10256, 2020 U.S. Dist. LEXIS 198655, at *62 (S.D.N.Y. Oct. 24, 2020) (pro se plaintiff alleged discriminatory treatment compared to White associates without alleging how they were comparable or who they were); *Budhan v. Brightworks Sustainability LLC*, No. 24-cv-5104, 2025 U.S. Dist. LEXIS 56557, at *11 (S.D.N.Y. Mar. 26, 2025) (plaintiff alleged differential treatment from non-Black materials analysts but did not specify who or how she was treated differently); *Kpaka v. City Univ. of N.Y.*, 708 F. App'x 703, 705 (2d Cir. 2017) (summary order; complaint lacked any allegations to identify basis for comparability); *Kueh v. New York*, No. 23-cv-666, 2024 U.S. Dist. LEXIS 213886, at *8 (S.D.N.Y. Nov. 25, 2024) (comparators did not seek same accommodation as plaintiff); *Báez v. New York*, 629 F. App'x 116, 119 (2d Cir. 2015) (no inference of

discrimination where five of the six promoted were in same protected class as plaintiff); *Mansaray v. Kraus Sec. Serv.*, No. 20-cv-1415, 2022 U.S. Dist. LEXIS 26124, at *10 (S.D.N.Y. Feb. 14, 2022) (pro se plaintiff did not sufficiently identify similarly-situated comparators).

**2. Plaintiff Alleges Sufficient Temporal Proximity**

Defendant argues that Plaintiff does not allege sufficient temporal proximity to raise an inference of discrimination. MTD at 13. Defendant is wrong.

Defendant fired Plaintiff two months after the announcement of her pregnancy. Compl. ¶ 69. Courts routinely hold that time to be sufficiently proximate to raise an inference of discrimination. *See, e.g.*, *Puranik v. Child.'s Place Servs. Co., LLC*, No. 24-cv-4441, 2025 U.S. Dist. LEXIS 171797, at *29 (S.D.N.Y. July 31, 2025) (two months sufficient to show causal connection); *Mehta v. Dla Piper LLP*, No. 23-cv-4757, 2025 U.S. Dist. LEXIS 196664, at *20 (S.D.N.Y. Sep. 29, 2025) ("temporal proximity of about two months between [plaintiff's] pregnancy announcement and her firing suffices to meet . . . 'minimal' burden at the prima facie stage"); *Bueno v. Eurostars Hotel Co.*, No. 21-cv-535, 2022 U.S. Dist. LEXIS 4605, at *4, 22 (S.D.N.Y. Jan. 7, 2022) (plaintiff established temporal proximity between date of pregnancy announcement and termination, despite plaintiff's notice of intent to start IVF long before).

Ogilvie's acceleration of the removal of plaintiff's duties after learning of her IVF-plans was also immediate. This also constitutes sufficient temporal proximity. *See, e.g.*, *Pace v. Town & Country Veterinary Clinic P.C.*, No. 20-cv-279, 2022 U.S. Dist. LEXIS 135779, at *11-12 (N.D.N.Y. Aug. 1, 2022) (sufficient temporal proximity between protected action and plaintiff "stripped of her manager duties").

Second, contrary to Defendant's argument, even a span of six months (the time Defendant posits as relevant) can be sufficient to draw an inference of causation. Defendant's own citation supports this conclusion. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)

(the Second Circuit has not "drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship . . . ."; finding a six month gap could still support and inference of causation) (internal quotation and citation omitted). Other courts have found an inference of discriminatory intent where plaintiffs asserted similar periods of temporal proximity. *See Dantuono v. Davis Vision, Inc.*, No. 07-cv-2234, 2009 U.S. Dist. LEXIS 122119, at **18-20 (E.D.N.Y. Dec. 29, 2009) (six months between announcement of intention to become pregnant and firing showed temporal proximity); *Pardo v. Tomas Infernuso DVM, P.C.*, No. 24-cv-00190, 2024 U.S. Dist. LEXIS 172504, at *18 (E.D.N.Y. Sep. 24, 2024) (eight months temporal proximity in pregnancy discrimination case).

Longer spans of time are permissible where, as here, a defendant's conduct constitutes patterned behavior occurring over a period of time. *See Ri Sau Kuen Chan v. NYU Downtown Hosp.*, No. 03-cv-3003, 2004 U.S. Dist. LEXIS 1419, at *9 (S.D.N.Y. Jan. 30, 2004) ("Even though an alleged [adverse action] may be separated by a significant gap in time from the date [of protected activity], evidence of an intervening pattern of antagonism . . . could support an inference" of discrimination); *Amador v. All Foods, Inc.*, No. 12-cv-1715, 2013 U.S. Dist. LEXIS 47458, at *19 (E.D.N.Y. Feb. 20, 2013) (denying motion to dismiss where employer fired employee six months after she fell pregnant and there was "a pattern of escalating mistreatment" leading up to the termination).

Defendant's citations to the contrary are inapplicable here: Kraken fired Plaintiff two months after she announced her pregnancy, and after a six-month course of conduct to replace her with Ogilvie's preferred men. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (on summary judgment, 20-months temporal proximity alone insufficient); *Gehlaut v. N.Y.C. Dep't of Educ.*, No. 24-cv-1741, 2025 U.S. App. LEXIS 23110, at *6 (2d Cir. Sep. 8, 2025)

(one-year temporal proximity alone insufficient to raise inference of discriminatory intent); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1184 (2d Cir. 1996) (12 days sufficient to show causation); *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 374 (S.D.N.Y. 2005) (on summary judgment, 11 months insufficient); *Rinsler v. Sony Pictures Entm't, Inc.*, No. 02-cv-4096, 2003 U.S. Dist. LEXIS 14754, at *34 (S.D.N.Y. Aug. 22, 2003) (on summary judgment, six-month temporal proximity without any other support insufficient ).

**3. Kraken Lodges Legally Incorrect Arguments Concerning the Import of Plaintiff's Allegations**

Defendant puts forth several incorrect legal theories as to why Plaintiff's allegations cannot support a claim of discrimination. All such arguments are meritless.

Defendant incorrectly argues that, because Ogilvie began discriminating against Plaintiff prior to her intention to pursue IVF, he could not have discriminated against her on that basis. MTD at 14. Plaintiff alleges discrimination on the basis of gender, including her pursuit of IVF treatments and ultimate pregnancy, which are specific forms of gender and disability discrimination and, in the case of the NYCHRL, protected characteristics unto themselves. *See, e.g.*, *Govori v. Goat Fifty, L.L.C.*, No. 10-cv-8982, 2011 U.S. Dist. LEXIS 33708, at *8 (S.D.N.Y. Mar. 30, 2011) (undergoing IVF protected as pregnancy-related, sex-based action); *Bueno*, 2022 U.S. Dist. LEXIS 4605, at *24 (pregnancy discrimination claim under NYCHRL and NYSHRL); N.Y.C. Admin. Code 8-107(1) (unlawful discriminatory practice to discriminate based on sexual and reproductive health decisions). Plaintiff may simultaneously assert claims for both gender discrimination and pregnancy discrimination; one claim does not vitiate the other. Rather, Plaintiff's gender and pregnancy claims are inexorably interwoven; Kraken's discrimination based on Plaintiff's pregnancy can be interpreted as both continued and additional discrimination. *See, e.g.*, *Lenzi*, 944 F.3d at 112 (reviving plaintiff's pregnancy discrimination

and unequal pay based on gender discrimination claims); *Kegelmyer v. Cellular Sales Servs. Grp., LLC*, No. 24-cv-839, 2025 U.S. Dist. LEXIS 147576, at *27-29 (W.D.N.Y. July 31, 2025) (pregnancy and gender discrimination claims actionable even where gender discrimination predated pregnancy)

Defendant also mistakenly argues that employers who have previously shown tolerance or acquiescence towards IVF/pregnancy cannot thereafter face suit for pregnancy discrimination. MTD at 14. However, "[t]he kindness or vindictiveness of an employer-defendant does not provide an independent basis for (or the exoneration from) an employment discrimination action." *Danzer*, 151 F.3d at 56 n.6 (reinstating discrimination claims). Pregnancy discrimination is still actionable even if the employer was, at some point, seemingly pregnancy-tolerant. *See, e.g.*, *Hall v. Nalco Co.*, 534 F.3d 644, 648-49 (7th Cir. 2008) (reinstating pregnancy discrimination claim where employer approved plaintiff's leave to undergo IVF and fired her thereafter); *Govori*, 2011 U.S. Dist. LEXIS 33708, at *9-12 (pregnancy discrimination claim actionable where defendant fired plaintiff after IVF treatment, even though defendant employed pregnant employee at the time and managers were "supportive of her ambitions of motherhood").

Defendant similarly incorrectly claims that Plaintiff's complaint should be dismissed because she does not allege "that anyone at [Kraken] responded inappropriately to her when she broached [pregnancy-related] topics or gave any indication that they would treat Plaintiff differently . . . ." MTD at 9. This is a plain misreading of the complaint. Plaintiff alleges that Ogilvie, with increased intensity, further stripped her responsibilities and assigned them to men, sabotaged her work, did not discipline male colleagues for serious errors, and terminated her employment, two months after she announced her pregnancy without explanation – all classic indicia of disparate treatment.

Defendant further argues that Plaintiff did not allege discriminatory intent because she did not allege any "disparaging remark[s]" about her gender or pregnancy journey. MTD at 9. However, it is settled law that Plaintiff need not prove her case by direct evidence, and that allegations of disparaging comments are not necessary to show discriminatory intent. *See, e.g.*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.") (internal citations omitted); *Vega*, 801 F.3d at 86 ("Because discrimination claims implicate an employer's usually unstated intent and state of mind . . . rarely is there 'direct, smoking gun, evidence of discrimination. . . . ' Instead, plaintiffs usually must rely on 'bits and pieces' . . . to support an inference of discrimination.") (internal citations omitted). Defendant's contention that such pleadings are necessary at the pleadings stage (or otherwise) therefore is simply wrong.

#### 4. The Court Should Reject Kraken's Self-Serving Interpretation of Plaintiff's Allegations

Defendant attempts to direct the Court as to its preferred interpretation of Plaintiff's allegations. But at the pleading stage, courts routinely reject, as they must, defendants' efforts to provide an "alternative explanation" for discriminatory conduct. *See, e.g.*, *Clark v. CSX Transp., Inc.*, No. 13-cv-1596, 2014 U.S. Dist. LEXIS 136724, at *10 (N.D.N.Y. Sep. 29, 2014) (premature to consider on motion to dismiss defendant's alleged non-discriminatory reason for termination). "The plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification." *Littlejohn,* 795 F.3d at 311. The Court should therefore reject Defendant's improper factual arguments.[3] "Defendant[ ] will 'have

[3] *See, e.g.*, MTD at 10 (Plaintiff's allegations "support an obvious, non-discriminatory reason why [Kraken] would bring someone with a technical background onto Custody."); *id.* at 11 ("It stands to reason that an employee with greater responsibilities who did not earn commissions

an opportunity to test [its] factual claims in discovery and to renew those argument[s] at summary judgment, or at trial." *Branch v. State Univ. of N.Y.*, No. 18-cv-9516, 2020 U.S. Dist. LEXIS 127422, at *10 (S.D.N.Y. July 20, 2020) (rejecting Defendant's factual disputes with the allegations); *see also Mumin*, 2025 U.S. Dist. LEXIS 189235, at *22 (denying dismissal where questions raised by defendants "more properly suited to a later stage, with the benefit of discovery"). Indeed, Kraken's assertion of alternative factual interpretations of Plaintiff's allegations is an implicit admission that not only has Plaintiff properly alleged discrimination, but that this case will require a jury trial to resolve disputed facts.

For example, Defendant goes to great lengths to insist that Ogilvie acted out of self-interest, rather than with discriminatory intent. MTD at 15 ("Ogilvie . . . acted out of self-preservation . . . ."). Nothing in Plaintiff's allegations supports this conclusion, let alone requires it. Rather, Plaintiff alleges facts to support an inference that Ogilvie's behavior was because she was a woman, began undergoing IVF treatment, and became pregnant. Compl. ¶¶ 4-5, 33-38, 41 55. The Court must accept these facts as true at the pleading stage. *Littlejohn*, 795 F.3d at 311 (plaintiff has "minimal burden" to show discriminatory intent).[4]

---

would have a higher base salary than an employee with fewer responsibilities who did earn commissions"); *id.* at 13 ("Plaintiff ignores the tendency of salaries (and responsibilities) to increase over time.").

[4] Even accepting – which Plaintiff does not – Kraken's interpretation of "self-preservation," it would not foreclose an inference that Ogilvie was motivated, at least in part, by gender bias. *See Menaker*, 935 F.3d at 39 (even where the "*primary* motivation may have been financial or vindictive, Title VII requires that we look beyond primary motivations . . . . courts must determine whether sex was a motivating factor . . . even 'in part,' on sex discrimination") (emphasis in original) (internal citations omitted). Indeed, while Custody's shortcomings may have been the result of multiple factors involving individuals other than Plaintiff (all men); Ogilvie blamed only Plaintiff for them and did not discipline (or fire) any other employee on the team. Compl. ¶ 25 (Plaintiff was the only woman reporting to Ogilvie), ¶ 46, 50, 63.

Defendant similarly argues that "simple favoritism is not actionable discrimination." MTD at 10-11. Defendant is again incorrect. Favoritism based on a protected class, as alleged here, is actionable discrimination. *See, e.g.*, *Santiago*, 634 F. Supp. 3d at 151-53 ("hierarchy of favoritism" for Puerto Rican employees constituted actionable discrimination claim). Kraken's reliance on *McCarthy v. Brennan* on this issue is unpersuasive; the *McCarthy* plaintiff did not allege any of the same facts here, such as a new manager systemically and discriminatorily removing his duties to give to colleagues not in his protected class, leading to the accelerated termination of his employment. *See* No. 19-cv-1386, 2020 U.S. Dist. LEXIS 169083, at *6-9, 17 (N.D.N.Y. Sep. 16, 2020) (pro se plaintiff failed to connect favoritism to protected characteristic).

Defendant's other cited cases fare no better. Defendant relies on *Franchino v. Terence Cardinal Cook Health Care Ctr., Inc.*, 692 F. App'x 39 (2d Cir. 2017) to argue that Ogilvie acted in non-discriminatory self-interest. But *Franchino* supports Plaintiff. There, the Second Circuit revived the plaintiff's claims because he raised an inference of age discrimination by alleging, *inter alia*, false allegations against him, deviation from protocol in the ensuing investigation, and replacing him with a younger employee. *See id.* at 41-42 (noting factors like "more favorable treatment of employees not in the protected group" and suspicious circumstances in "the sequence of events leading to the plaintiff's discharge" support inference of discrimination). Plaintiff similarly alleges (with more detail) favorable treatment of men (Compl. ¶¶ 41-59, 72-80), fabricated performance concerns (*id.* ¶¶ 60-61), deviation from performance review protocol (*id.* ¶ 62), attempted sabotage of her work (*id.* ¶ 66), her replacement by men (*id.* ¶¶ 30, 41, 46, 50, 52), and all those involved in her termination were men. *Id.* ¶¶ 3, 34, 69. *Robbins v. City of New York* – in which plaintiff alleged "unspecified" allegations of interpersonal conflict and a

"complete absence" of facts that could raise a discriminatory inference – is similarly unpersuasive. 254 F. Supp. 3d 434, 436, 440 (E.D.N.Y. 2017).

### C. Plaintiff Sufficiently Pleads Claims Under the NYSHRL and NYCHRL

Plaintiff's burden at the pleading stage with respect to her state and city claims is even lower than their federal counterpart, and thus they must also survive Defendant's motion. While still required to meet *Iqbal*'s plausibility standard, Plaintiff's allegations need only plausibly show that she was, "treated less well because of discriminatory intent." *Bueno*, 2022 U.S. Dist. LEXIS 4605, at *24 (cleaned up) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)). Because Plaintiff sufficiently pleads discrimination claims under Title VII, Plaintiff's NYSHRL and NYCHRL claims are also sufficiently pled, as city and state standards are more employee-friendly than the Title VII standard. *See, e.g.*, *Mehta*, 2025 U.S. Dist. LEXIS 196664, at *30 (Title VII provides "a *floor* below which the City's [and State's] Human Rights Law cannot fall" (quoting *Loeffler v. Staten Is. Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (emphasis in original)); *Noh*, 2025 U.S. Dist. LEXIS 59543, at *31-32 (sufficient Title VII allegations "must necessarily be sufficient" for NYCHRL and NYSHRL). In any event, Plaintiff's allegations sufficiently raise an inference that was treated less well because of her membership in a protected class. *See* Compl. ¶¶ 2-81.

Defendant's case citations do not require a different result. *See Udoh v. N.Y.C. Dep't of Prob.*, No. 24-cv-03982, 2025 U.S. Dist. LEXIS 148391, at *15-16 (S.D.N.Y. Aug. 1, 2025) (pro se plaintiff failed to plead a disability or employer's notice of same); *Moore v. Hadestown Broadway LLC*, 722 F. Supp. 3d 229, 251-52 (S.D.N.Y. 2024) (plaintiff sufficiently pleaded discrimination claims under Title VII, state, and city law but claims dismissed for First Amendment reasons); *Keles v. Davalos*, 642 F. Supp. 3d 339, 376 (E.D.N.Y. 2022) (pro se plaintiff failed to state NYSHRL age claim against municipal defendants (analyzed under a

higher standard) but otherwise sufficiently pleaded NYSHRL and NYCHRL claims); *Mumin v. City of New York*, 760 F. Supp. 3d 28, 53 (S.D.N.Y. 2024) (plaintiff failed to plead any basis to conclude comparators were similarly situated); *Workneh v. Super Shuttle Int'l, Inc.*, No. 15-cv-3521, 2016 U.S. Dist. LEXIS 136906, at *22-23 (S.D.N.Y. Sep. 30, 2016) (pro se plaintiff failed to plead facts showing inference of discrimination, only an "unpleasant" and "dangerous" work environment); *Margarita v. Mountain Time Health, LLC*, 240 N.Y.S.3d 80, 83-84 (2d Dep't 2025) (plaintiff's allegation that she alone was laid off during mass lay off demonstrably incorrect); *Cardwell*, 2020 U.S. Dist. LEXIS 198655, at *62 (failed to identify similarly-situated individuals with similar history of work performance).

### D. Kraken's Arguments Concerning Plaintiff's Pleaded Entitlement to Punitive Damages Rely on Misapplication of Law

Contrary to Defendant's arguments, Plaintiff's demand for punitive damages is sufficient and proper.

In the first instance, Kraken misstates the law with respect to Plaintiff's ability to recover punitive damages under the NYSHRL. While historically the NYSHRL did not provide for punitive damages as a remedy, by 2019 legislative amendment punitive damages are now available. N.Y. Exec. Law § 297; *Doe v. Long Is. Motors, Inc.*, No. 21-cv-1232, 2022 U.S. Dist. LEXIS 102851, at *24 (E.D.N.Y. June 8, 2022) (NYSHRL was amended to permit punitive damages "in cases of employment discrimination related to private employers" and "there is no limit on these punitive damages").[5]

Second, Plaintiff need not allege specific allegations beyond her entitlement to punitive damages. Fed. R. Civ. P. 8(a)(3) (complaint need only contain "a demand for the relief sought,

---

[5] Notably, these same amendments require NYSHRL claims to be evaluated under more liberal standards than their federal counterparts. *See* N.Y.S., S6577, 2019-2020 Leg. Sess. §§ 2, 6 (eff. Oct. 19, 2019).

which may include relief in the alternative or different types of relief"). Per Defendant's own cases, motions to strike punitive damages within motions to dismiss are routinely denied because damages are not a separate cause of action. *See De Souza v. Planned Parenthood Fed'n of Am., Inc.*, No. 21-cv-5553, 2022 U.S. Dist. LEXIS 101757, at *12 (S.D.N.Y. June 7, 2022) (denying motion to strike punitive damages as premature); *see also Horowitz v. Spark Energy, Inc.*, No. 19-cv-7534, 2020 U.S. Dist. LEXIS 137838, at *31 (S.D.N.Y. July 31, 2020) (motion to dismiss punitive damages was "premature" because "whether a plaintiff is entitled to punitive damages is a fact issue that cannot be determined on a motion to dismiss, and that should be left to . . . the trier of fact") (cleaned up). In any event, Plaintiff's allegations read in total, even at the pleadings stage, could support a finding of the requisite conduct and intent to justify a punitive damages award. *See Santana v. G.E.B. Med. Mgmt., Inc.*, Ind. No. 305261/2008, 2017 N.Y. Misc. LEXIS 4186, at *2-3 (Sup. Ct. Bronx Cty. Oct. 20, 2017) (affirming punitive damages verdict where employer stripped newly-pregnant employee of job duties, shunned her, then orchestrated her termination).

## II. PLAINTIFF HAS SUFFICIENTLY PLEADED VIOLATIONS OF NYLL SECTION 193

### A. Kraken Incorrectly Argues the Necessary Legal Standards for Pleading and Proving NYLL Section 193 Claims

Defendant incorrectly argues that Plaintiff's NYLL § 193 fails because (1) she did not assert a breach of contract, and relatedly, (2) her claim does not satisfy the statute of frauds. As with many of Kraken's legal arguments, it misunderstands and misapplies the law.

Where Plaintiff does not assert a claim to a discretionary bonus, she is not required to plead the existence of a written contract or breach thereof. *See Pachter v. Bernard Hodes Grp., Inc.*, 891 N.E.2d 279, 284-85 (2d Dep't 2008) (for commissions claim, a "lack of . . . specific written contract . . . [is] not determinative). Rather, as here, a course of dealing showing

employee has received commissions in the past is sufficient to demonstrate that such employee was to be paid on a commission basis. *Id.* at 285 ("evidence of the parties' extensive course of dealings" in paying commissions to executive was sufficient to demonstrate existence of commission plan); *Chenensky v. N.Y. Life Ins. Co.*, No. 07-cv-11504, 2009 U.S. Dist. LEXIS 119549, at *19-22 (S.D.N.Y. Dec. 22, 2009) (nature of parties prior course of dealings relating to earned commissions was a fact question for the jury); *Schweiger v. Wind*, Ind. No. 154211/2012, 2014 N.Y. Misc. LEXIS 130, *11 (Sup. Ct. New York Cty. Jan. 15, 2014) (sustaining § 193 claim in absence of written agreement based on employer's historical practice of paying commissions).

Plaintiff's Complaint alleges a course of dealing sufficient to satisfy her minimal pleading burden; specifically, that Kraken paid Plaintiff commissions throughout her employment until Q1 2023, but withheld some or all subsequent earned commissions. *See* Compl. ¶¶ 75-81 (After Ogilvie became Plaintiff's supervisor, infrequently paid or stopped paying altogether Plaintiff's commissions.). Plaintiff also has provided sufficient detail as to Defendant's commission payment practices, including its course of dealing, to sustain her claim. *Id.*; *see Schweiger*, 2014 N.Y. Misc. LEXIS 130, *11 (history of commissions sufficient to establish entitlement under NYLL § 193). Thus, Plaintiff has sufficiently pleaded her NYLL § 193 claims. *See, e.g.*, *Birner v. Kensington Vanguard Holdings, LLC*, No. 24-cv-2743, 2025 U.S. Dist. LEXIS 61611, at *17-18 (S.D.N.Y. Mar. 31, 2025) (NYLL § 193 claim where employer failed to pay commissions).

*Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 294 (S.D.N.Y. 2016), cited by Kraken, supports Plaintiff's position. In *Apple*, the court denied summary judgment on plaintiff's NYLL § 193 claim, citing questions about whether defendant conformed with the agreement but

recognizing that, in the absence of an agreement, the parties' course of conduct would control. *Id.* at 294. Many of Kraken's cited cases rely on the same faulty and inapposite premise not applicable to Plaintiff's claims here, and either allege a failed breach of contract claim or no breach of contract claim, neither of which is relevant.[6] *See Gatto v. Fujitec Am., Inc.*, No. 21-cv-9754, 2024 U.S. Dist. LEXIS 175363, at *25-26 (S.D.N.Y. Sep. 26, 2024) (failed breach contract claim precludes NYLL claim); *O'Grady v. BlueCrest Capital Mgmt. LLP*, 646 F. App'x 2, 4 (2d Cir. 2016) (same); *Karmilowicz v. Hartford Fin. Servs. Grp.*, 494 F. App'x 153, 158 (2d Cir. 2012) (same); *Tierney v. Capricorn Invs., L.P.*, 592 N.Y.S.2d 700, 703 (1st Dep't 1993) (same). *See also Gerding v. Ljungren*, No. 23-cv-1119, 2025 U.S. App. LEXIS 33798, at *4 (2d Cir. Dec. 29, 2025) (failed to allege contract); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 416 (S.D.N.Y. 2009) (same); *Komlossy v. Faruqi & Faruqi, LLP*, No. 15-cv-9316, 2017 U.S. Dist. LEXIS 25490, at *32 (S.D.N.Y. Feb. 23, 2017) (same); *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (same); *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 516 (E.D.N.Y. 2017) (dismissing NYLL § 193 claim related to expenses but maintaining NYLL § 193 claim with respect to unlawful deductions of wages).

Additionally, the statute of frauds is not implicated here, for the same reason a written contract is not required. As the Third Department ruled, "we reject defendants' assertion that such claim [for unpaid commissions under NYLL § 193] is barred by the statute of frauds. An agreement to pay an at-will employee commissions earned during the period of . . . her employment is capable of performance within one year and does not violate the statute of frauds." *Kieper v. The Fusco Grp. Partners Inc.*, 59 N.Y.S.3d 561, 562-63 (3d Dep't 2017)

[6] The plaintiff in *Beng Soon Lim v. Harvest Int'l Realty, Inc.* was not an "employee" under the NYLL. No. 08-cv-3505, 2009 U.S. Dist. LEXIS 109389, at *17 (E.D.N.Y. Nov. 23, 2009). Plaintiff was, undisputedly, an employee of Kraken.

(citations omitted). Kraken's refusal to fully pay commissions, earned pre-termination and which are capable of performance within a year, does not implicate the statute of frauds. *See* Compl. ¶ 75 (Kraken paid commissions fulsomely until Q1 2023; thereafter paid sporadically).[7]

Accordingly, Plaintiff's non-assertion of a breach of contract is no basis to dismiss Plaintiff's NYLL § 193 claim.

**B. Plaintiff's Unpaid Commissions Qualify as Wages Under Section 193**

Defendant asserts that Plaintiff's commissions were not "wages" because such commissions were "dependent . . . on the financial success of the business." MTD at 21. This misstates the law and Plaintiff's allegations. The New York Court of Appeals has long held that Plaintiff's commissions qualify as NYLL § 193 wages. *See Pachter*, 891 N.E.2d at 283-84 ("a 'commission' is considered a 'wage' under . . . the Labor Law"). *See also Hernandez Tech., Inc. v. Rivera*, 237 N.Y.S.3d 317, 322 (4th Dep't 2025) (the NYLL defines "wages" as "earnings of an employee for labor or services . . . on a time, piece, *commission* or other basis" (emphasis in original)). Plaintiff became entitled to the commissions the moment she earned the wages – specifically, the moment she received a client's commitment to invest. *See Chenensky*, 2009 U.S. Dist. LEXIS 119549, at *19 (the commission becomes "earned" and thus, a "wage" when "a ready, willing and able purchaser of services" is produced, absent agreement otherwise (quoting *Pachter*, 891 N.E.2d at 284-85)). Such commissions are "vested and mandatory, as opposed to discretionary and forfeitable." *Hernandez Tech., Inc.*, 237 N.Y.S.3d at 322. Notably, Plaintiff does not allege that her commissions were discretionary in any manner.

---

[7] To the extent the Court reads the caselaw to require performance within a year, Plaintiff alleges, and would so amend the Complaint to state, that commissions at Kraken were earned and paid on a quarterly basis, that is, four times a year, thereby satisfying the any statute of frauds requirement.

Defendant's cited cases do not warrant a different result. The *Komlossy* court dismissed the plaintiff's § 193 claim because her breach of contract claim failed and because she did not allege that her commission was "expressly link[ed] to [Plaintiff's] labor or services personally rendered." *See Komlossy*, 2017 U.S. Dist. LEXIS 25490, at *35. *Truelove v. Northeast Capital & Advisory, Inc.* is irrelevant for largely the same reason. 738 N.E.2d 770, 772 (N.Y. 2000) (bonus were not "wages" where terms of bonus compensation plan "did not predicate bonus payments upon plaintiff's own personal productivity" but instead were discretionary).

**C. Plaintiff Seeks Post-Termination Commissions Under Discrimination Law**

Defendant incorrectly conflates Plaintiff's damages under anti-discrimination laws with its NYLL objections. MTD at 22. Plaintiff correctly seeks make whole relief on her discrimination claims, including for commissions she would have earned had Kraken not fired her illegally. *See* Compl. ¶ 80; Prayer for Relief at C. Her entitlement to front and back pay should she prevail, among other damages, is without dispute. *See Olaechea v. City of New York*, No. 17-cv-4797, 2022 U.S. Dist. LEXIS 142037, at *29 (S.D.N.Y. Aug. 9, 2022) (compensation plaintiff would have earned but for defendant's discrimination are available remedies under Title VII, the NYSHRL, and the NYCHRL).

As a point of clarification, Plaintiff does not allege a NYLL § 193 claim with respect to any commission she would have earned following Kraken's termination of her employment.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendant's Motion to Dismiss. Alternatively, Plaintiff respectfully requests an opportunity to amend her complaint to address any pleading deficiencies should the Court so determine such deficiencies exist.

Dated: New York, New York
February 18, 2026

Respectfully submitted,

**OUTTEN & GOLDEN LLP**



Gregory S. Chiarello
Amanda T. Chan
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
gchiarello@outtengolden.com
achan@outtengolden.com

Hannah C. Meropol (pro hac vice forthcoming)
1 California St., 12th Floor
San Francisco, CA 94111
Telephone: (415) 991-6569
hmeropol@outtengolden.com

**WORD COUNT VERIFICATION**

Pursuant to Judge Garnett's Individual Rules & Practices In Civil Matters II(B)(3) and Local Civil Rule 7.1(c), I, Gregory S. Chiarello, certify that, according to the word count of the word-processing program used to prepare the foregoing memorandum of law, there are **7576** words in those portions of the document covered by Local Civil Rule 7.1(c).